UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| BRAD D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00021-TWP-DML |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) | |
| Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Brad D.[2] requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "SSA"), denying his application for Disability Insurance Benefits under the Social Security Act. For the following reasons, the Court **affirms** the decision of the Commissioner.

## I.   PROCEDURAL BACKGROUND

On May 1, 2019, Brad D. filed an application for Disability Insurance Benefits, alleging a disability onset date of September 3, 2018. (Filing No. 10-2 at 28.) His application was initially denied on August 28, 2019, (Filing No. 10-4 at 7), and upon reconsideration on December 23, 2019, (Filing No. 10-4 at 17). Administrative Law Judge Christopher S. Tindale (the "ALJ") conducted a hearing on July 15, 2020, due to the coronavirus pandemic, in which Brad D., represented by counsel, and a vocational expert ("VE") participated and testified. (Filing No. 10-

---

[1] On July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

[2] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

2 at 55-77.)  The ALJ issued a decision on August 4, 2020, concluding that Brad D. was not entitled

to benefits.  (Filing No. 10-2 at 25-38.)  The Appeals Council denied review on January 5, 2021.

(Filing No. 10-2 at 2.)  On February 1, 2021, Brad D. timely filed this civil action, asking the Court

pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner.  (Filing No. 1.)

## II.    STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot

obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151

(2019).  Disability is defined as the "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A); *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).  To

be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him

from doing not only his previous work but any other kind of gainful employment which exists in

the national economy, considering his age, education, and work experience.   42 U.S.C. §

423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant

is disabled.  At step one, if the claimant is engaged in substantial gainful activity, he is not disabled

despite his medical condition and other factors.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, if the

claimant does not have a "severe" impairment that also meets the durational requirement, he is not

disabled.  20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment is one that "significantly limits [a

claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  At

step three, the Commissioner determines whether the claimant's impairment or combination of

impairments meets or medically equals any impairment that appears in the Listing of Impairments,

2

20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps.  *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v).  Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [his] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996), 1996 WL 374184).  At step four, if the claimant can perform his past relevant work, he is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given his RFC and considering his age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  The claimant is not disabled if he can perform any other work in the relevant economy.  *Id*.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step.  *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Stephens*, 888 F.3d at 327.  For the purpose of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'"  *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154).  "Although this Court reviews the record as a whole, it cannot substitute its own judgment

for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327.  Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)).  The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.  *Stephens*, 888 F.3d at 327.  When an ALJ does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy.  *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).  Typically, a remand is also appropriate when the decision is not supported by substantial evidence.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## III.   <u>FACTUAL BACKGROUND</u>

When Brad D. filed his application, he alleged that he could no longer work because of degenerative joint disease in both shoulders and severe, symptomatic degenerative changes of the lumbar spine.  (<u>Filing No. 10-6 at 5</u>.)  He was 50 years old when his alleged disability began. (<u>Filing No. 10-5 at 2</u>.)   Brad D. had completed some college and an apprenticeship as an ironworker.  (<u>Filing No. 10-6 at 6</u>.)  He had worked as an ironworker.  *Id*.  The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need not be repeated here.  Below are the facts relevant to the Court's disposition of this case.

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Brad D. was not disabled.  (<u>Filing No. 10-2 at 38</u>.)  At step one,

the ALJ found that Brad D. had not engaged in substantial gainful activity[3] since September 3, 2018, the alleged onset date.  (Filing No. 10-2 at 30.)  At step two, the ALJ found that Brad D. had "the following severe impairments: disorders of the spine and obesity."  (Filing No. 10-2 at 30 (citation omitted).)  At step three, the ALJ found that he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Filing No. 10-2 at 31.)  After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: can occasionally climb ramps and stairs, occasionally climb ladders, ropes, or scaffolds.  Can occasionally balance, stoop, kneel, crouch, and crawl.  Occasional overhead reaching with the right upper extremity.  Frequently handle, finger, and feel with the left upper extremity.  Must avoid concentrated exposure to wetness, whole body vibrations, such as a jackhammer, and to dangerous hazards such as unprotected heights.  He is able to be aware of normal hazards in the workplace and take appropriate precautions.

(Filing No. 10-2 at 31-32.)  At step four, the ALJ found, considering the VE's testimony and Brad D.'s RFC, that he could not perform his past relevant work as an ironworker.  (Filing No. 10-2 at 36.)  At step five, the ALJ found, considering the VE's testimony and Brad D.'s age, education, work experience, and RFC, that he could have performed other work with jobs existing in significant numbers in the national economy in representative occupations like a cashier, packager, and routing clerk.  (Filing No. 10-2 at 36-37.)

## IV.    DISCUSSION

Brad D. makes six assertions of error that: (1) the ALJ failed to note the progressive nature of Brad D.'s degenerative disc disease and obesity after reconsideration, (Filing No. 12 at 6-7), (2) the ALJ erred by finding the assessments of the state agency reviewing consultants more

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

persuasive than the opinions of a treating physician and an examining consultant, (Filing No. 12 at 7-9), (3) the ALJ improperly relied on reports of Brad D. performing certain activities in October and November 2018 to show that he had the ability to sustain light exertional work, (Filing No. 12 at 9-10), (4) the ALJ failed to find that Brad D. needed to use a cane to stand 20-30 hours a week, (Filing No. 12 at 10-11), (5) the ALJ erred evaluating Brad D.'s subjective complaints, (Filing No. 12 at 11-12), and (6) the ALJ erred by not including certain limitations in hypothetical questions put to the VE, (Filing No. 12 at 12).  The Court will address the issues to the extent necessary to explain the disposition of the appeal.

## A.    Opinion Evidence

According to the regulatory scheme for claims like Brad D.'s that were filed on or after March 27, 2017, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[4] including those from [the claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  The SSA continues to use factors to evaluate the "persuasiveness of medical opinions and prior administrative medical findings" but the "most important factors" to be considered are "supportability" and "consistency."  *Id*.  How those factors were considered must be explained in the decision.  *Id*. at 404.1520c(b)(2).  "Supportability" considers the relevance of "the objective medical evidence and supporting explanations presented by a medical source."  *Id*. at 404.1520c(c)(1).  "Consistency" is compared "with the evidence from other medical sources and nonmedical sources in the claim."  *Id*. at 404.1520c(c)(2).  Explicit consideration of the remaining factors is permitted, but not always

---

[4] Administrative medical findings are determinations made by a state agency medical or psychological consultant at the initial or reconsideration level about a claimant's case, "including, but not limited to, the existence and severity of [his] impairment(s), the existence and severity of [his] symptoms, whether [his] impairment(s) meets or medically equals the requirements for any impairment listed in appendix 1 to this subpart, and [his] residual functional capacity."  20 C.F.R. § 404.1513a(a)(1).

required, except upon a finding that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same . . . ." *Id*. at 404.1520c(b)(2)-(3).  The remaining factors are the source's: (1) "[r]elationship with the claimant" including the "[l]ength of the treatment relationship," "[f]requency of examinations," "[p]urpose of the treatment relationship," "[e]xtent of the treatment relationship," and "[e]xamining relationship;" (2) "[s]pecialization;" and (3) "[o]ther factors," such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id*. at 404.1520c(c)(3)-(5).

The ALJ found the assessments of the state agency reviewing consultants "persuasive" that Brad D. was limited to a range of light exertional work.  (Filing No. 10-2 at 34.)  By regulation:

> Light work involves lifting no more than 20 pounds at a time with frequent[5] lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b).  By contrast:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally[6] lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

---

[5] "'Frequent' means occurring from one-third to two-thirds of the time.  Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10 (S.S.A. 1983), 1983 WL 31251, at *6.

[6] "'Occasionally' means occurring from very little up to one-third of the time.  Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5.

*Id*. at 404.1567(a).  If Brad D. were limited to sedentary exertional work, based on his age, education, and work experience, the Medical-Vocational Guidelines would direct that he be found "[d]isabled."  *See* 20 C.F.R. § Pt. 404, Subpt. P., App. 2, Rule 201.14.  The most restrictive and recent prior administrative medical finding was completed on December 13, 2019; the reviewing consultant's assessment included that Brad D. was limited to lifting and carrying twenty pounds occasionally, lifting and carrying ten pounds frequently, standing and walking about six hours in an eight-hour workday, sitting about six hours in a workday, and reaching overhead occasionally with the right upper extremity.  (Filing No. 10-3 at 21-23.)  The ALJ explained that the reviewing consultants' assessments were consistent with the medical evidence detailed in the decision, the consultants are medical experts familiar with the SSA's regulations, and they provided detailed explanations of the evidence they relied upon.  (Filing No. 10-2 at 34.)

### 1. <u>Consultative Examiner's Opinion</u>

Brad D. contends that the ALJ should have given more weight to the opinion of consultative examiner James Gatton, M.D.  (Filing No. 12 at 8.)  Brad D. also contends that Dr. Gatton's opinion is disabling based on the Medical-Vocational Guidelines because, according to the VE's testimony, the restrictions that Dr. Gatton assessed limited Brad D. to work at the sedentary exertional level.  (Filing No. 12 at 4.)  But Brad D. misrepresents the VE's testimony.  Dr. Gatton assessed that Brad D. "should be able to walk for two to three hours out of eight hours in a day.  The claimant probably could carry less than 10 pounds frequently and could carry more than 15 pounds on occasion."  (Filing No. 10-7 at 163.)  During the hearing, Brad D.'s counsel asked the VE about the effect of those limitations on a hypothetical individual's ability to perform work.  (Filing No. 10-2 at 75.)  The VE asked, "how many hours is the individual able to stand?"  *Id*.  Brad D.'s counsel replied, "The opinion that was provided was walking two to three hours, so I guess walking or standing

two to three hours." *Id*.  In response, the VE testified that "if the individual is only able to walk and stand two to three hours, that's a sedentary exertion level.  If an individual can walk two to three hours and stand from one to six hours, that would be light exertion level." (Filing No. 10-2 at 76.)  Dr. Gatton did not assess that Brad D. was limited to standing two to three hours in an eight-hour workday.  His counsel merely inferred that material distinction from Dr. Gatton's omission of any express assessment of Brad D.'s capacity to stand and Dr. Gatton's assessment that Brad D. was limited to walking two to three hours in an eight-hour day workday.  Brad D. has not demonstrated that the ALJ's evaluation of Dr. Gatton's actual assessment is material to his claim.

### 2.    **Treating Physician's Opinion**

Brad D. also contends that the opinion of his treating physician, John Gryspeerdt, M.D., should have been found persuasive because of his treating relationship, the consistency of his opinion with his examination findings, and the supporting explanation that he provided.  (Filing No. 12 at 8.)  Brad D. relies in part on the now rescinded SSR 96-2p (S.S.A. July 2, 1996), 1996 WL 374188, at *1, that reflected the old treating physician rule that treating opinions are entitled to special deference and even controlling weight, *i.e.*, the opinion must be adopted, in some situations.  SSR 96-2p does not apply to Brad D.'s claim because the ruling was rescinded for claims filed on or after March 27, 2017.  2017 WL 3928305, at *1.  As explained above, the SSA no longer gives special deference or controlling weight to assessments from any source.

On June 17, 2020, Dr. Gryspeerdt's assessment included that Brad D.'s non-operative, multi-level lumbar spine disease limited him to sitting ten minutes at one time and less than two hours in an eight-hour workday, standing ten minutes at one time and less than two hours in a workday, never lifting and carrying any weight (even less than ten pounds) in a competitive work situation, rarely bending or stooping, using his left hand only 16% of the workday for gross and

fine manipulation, and that he would need a cane for "occasional standing/walking" because of imbalance, pain, and weakness.  (Filing No. 10-7 at 216-20.)  Dr. Gryspeerdt explained that Brad D. had lower back pain between a 7-8 level out of ten that worsened with truncal flexion and prolonged standing, physical therapy had been "unhelpful," and the assessment was supported by clinical findings that he had an "antalgic gait with [a] cane."  (Filing No. 10-7 at 216.)

The ALJ addressed Dr. Gryspeerdt's various opinions, and explained:

Dr. G[]ryspeerdt provided another assessment in June 2020, which is also not persuasive.  It also limits the claimant to a less than full range of sedentary work. It is not consistent with his March 2020 examination.  It is extreme.  It precludes all lifting, even less than 10 pounds, which is markedly inconsistent with the claimant doing yard work a few months earlier, working on a car in 2018, or cutting down a tree.

He opined that the claimant can never twist, and rarely stoop, crouch, and climb. He limited handling/fingering with the left hand to 16%, and did not limit right handling/fingering.  He limited the bilateral upper extremities to 60% reaching in front and 25% overhead.  He opined that the claimant would be off task 25% of the day, and that he was capable of low-stress work.  His assessment appears to be based, at least in part, on the claimant's subjective complaints, and not the objective record.  As detailed above, the claimant's subjective complaints are not fully consistent with the longitudinal objective record.  Further, Dr. G[]ryspeerdt's assessment is conclusory, and it provides little, if any explanation of the objective medical evidence relied upon in making the specific opinion.  He did not indicate what evidence would support precluding all lifting, as well as the extreme limitations regarding handling/fingering.

(Filing No. 10-2 at 35.)  Assessments that a claimant "cannot sit, stand or walk for any sustained period of time," can be discounted particularly when it is "ambiguous whether the statement represents his own clinical impression of [the claimant's] objective limitations . . . ." *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021).  "[A]n ALJ does not owe any deference to the portion of a treating physician's opinion [that is] based solely on the claimant's subjective complaints." *Id*. (citation omitted).  And the applicable regulation requires only "[s]ource-level articulation."  20 C.F.R. § 404.1520c(b)(1).  The regulation explains that when a medical source provides multiple

medical opinions, the ALJ will not consider all the factors to evaluate each separate opinion individually but is required to only "articulate how [he] considered the medical opinions . . . from that medical source together in a single analysis using the factors . . . as appropriate." *Id*.  The ALJ was "not required to articulate how [he] considered" every assessment that Dr. Gryspeerdt made. *Id*.

Here, the ALJ gave sufficient examples of how Dr. Gryspeerdt's rather extreme assessment was not supported by the record.  Brad D. testified that he spent 65-70% of the time in his recliner. ([Filing No. 10-2 at 65](#).)  He also testified that his "left fingers don't work very well sometimes," and "it was hard to pick up . . . change as an example or [he] drop[ped his] fork a lot."  ([Filing No. 10-2 at 60](#).)  But during Dr. Gatton's consultative examination, for example, on August 17, 2019, he recorded that Brad D. "had no complaints of weakness, but the claimant [did] report some numbness in the left foot, but . . . no incoordination."  ([Filing No. 10-7 at 162](#).)  Dr. Gatton found that Brad D. had normal bulk and tone in all major muscle groups, "5/5 strength in the upper and lower extremities in both proximal and distal muscle groups, normal reflexes "2+ and symmetrical throughout," "normal sensation to pinprick and light touch except for some numbness and tingling in the left foot," and "fine fingering and gross gripping [were] normal on both sides."  ([Filing No. 10-7 at 162-63](#).)  During the last treatment visit in the record, with Dr. Gryspeerdt on March 17, 2020, he recorded that Brad D. reported back pain that was located on the lower left side and radiated to his mid-back and hip, as well as weakness in his legs during spasms.  ([Filing No. 10-7 at 210](#).)  On examination, Brad D. had normal knee reflexes and decreased ankle reflexes, "+1." ([Filing No. 10-7 at 211](#).)  But Dr. Gryspeerdt did not explain, and the record does not disclose what medically determinable impairment accounted for the limitations that he assessed with Brad

D.'s use of his left hand, let alone the objective evidence that demonstrated such extreme limitations.  Accordingly, the ALJ was entitled to discount Dr. Gryspeerdt's opinions.

### 3.   Prior Administrative Medical Findings

Brad D. asserts that the ALJ failed to acknowledge the evidence that the severity of his degenerative lumbar spine disease and obesity progressed during the period at issue, and as a result, the ALJ erred by giving the most weight to the prior administrative medical findings of the reviewing consultants.  (Filing No. 12 at 6.)

The Seventh Circuit has explained that "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion."  *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment") (additional citation omitted)).  The Seventh Circuit has also "said repeatedly that an ALJ may not 'play[] doctor' and interpret 'new and potentially decisive medical evidence' without medical scrutiny."  *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (ruling that the ALJ erred in failing to submit the claimant's first MRI in 11 years to medical scrutiny and in interpreting the results himself).  "An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments."  *McHenry*, 911 F. 3d at 871 (quoting *Akin v. Berryhill,* 887 F.3d 314, 317-18 (7th Cir. 2018)).

Here, at the reconsideration phase, the record that the consultant reviewed included all the objective diagnostic evidence, including the MRIs of Brad D.'s spine taken November 12, 2018. (Filing No. 10-3 at 23.)   The consultant expressly considered that on March 19, 2019, Dr.

Gryspeerdt recorded reports of Brad D. having daily back and hip pain, as well as examination findings that he had tenderness in the upper lumbar spine, "limited lumbar rotation," and an "antalgic gait." (Filing No. 10-3 at 24.) The consultant also considered the findings of Dr. Gatton's consultative examination, including that Brad D. had a staggering gait without the use of an assistive device. *Id*. The consultant further considered the findings of Dr. Gryspeerdt's examination on September 18, 2019, that Brad D. had a body mass index of 40, no focal deficits, and a normal gait without any noted use of an assistive device. *Id*.

The only objective evidence that the consultant did not review at the reconsideration stage was the examination findings from Brad D.'s treatment visit with Dr. Gryspeerdt on March 17, 2020. (*See* Filing No. 10-3 at 15-18 (evidence received by reconsideration), *compared with* Filing No. 10-1 at 3 (certified transcript of medical records including September 2019 treating examination (8F), December 2019 consultative examination (9F), and physical therapy evidence (10F) that largely duplicates the evidence at 3F, that was reviewed by the consultant).) During the 2020 visit, Brad D. had a body mass index of 39.85, he had no musculoskeletal deformity, a "normal gait" with "cane assist," slightly decreased lumbar lordosis, "soft lumbar tone," and point tenderness to the left at L2-3, no focal neurological deficits, and decreased ankle reflexes "1+." (Filing No. 10-7 at 211.) The findings from the examination are not significantly different than the findings in the record that the consultant reviewed. Accordingly, the picture had not changed so much to render the consultant's assessment stale, and Brad D. has not demonstrated that further expert review of the objective evidence in the updated record was necessary.

**B.**     **Subjective Symptom Evaluation**

Brad D. also asserts that the ALJ erred as a matter of law when evaluating Brad D.'s reported activities because they predated his alleged progression of the severity of his impairments, including degenerative disc disease.  (Filing No. 12 at 9-10.)

When evaluating a claimant's subjective statements about the intensity and persistence of symptoms, the ALJ often must make a credibility determination concerning the limiting effects of those symptoms.  *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).  Reviewing courts "may disturb the ALJ's credibility finding only if it is 'patently wrong.'"  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)).  If a fully favorable determination cannot be made based solely on the objective medical evidence, SSR 16-3p directs the ALJ to consider "all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms . . . ."  SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *6-8.  This includes the regulatory factors relevant to a claimant's symptoms, like daily activities, the location, duration, frequency, and intensity of pain or other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; and treatment, other than medication, an individual receives or has received for relief of pain or other symptoms. *Id*. at *7-8; 20 C.F.R. § 404.1529(c)(3).  The ALJ need only "discuss the factors pertinent to the evidence of record."  SSR 16-3p, 2017 WL 5180304, at *8.  The ALJ should also consider any inconsistencies within the evidence, including conflicting statements made by the claimant and others like treating sources.   20 C.F.R. § 404.1529(c)(4).  The ALJ may also consider inconsistencies between the severity of symptoms that a claimant described to the SSA compared with when he was seeking treatment. *See e.g.*, *Sienkiewicz v. Barnhart*, 409 F.3d 798, 803-04 (7th

Cir. 2005).   And the ALJ is required to credit the limitations established through subjective statements only to the extent that he finds them credible.  *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009).

The ALJ detailed Brad D.'s allegations including that his pain was aggravated by exertion like prolonged standing, stooping, and sitting, he used a cane if he was outside of his home because he had fallen, and he could do the laundry, but "[h]is children do the yardwork, which is a chore he used to do."  (Filing No. 10-2 at 32.)  However, the ALJ concluded that "[n]either [Brad D.'s] medical record nor his activities were consistent with allegations of disabling impairments." (Filing No. 10-2 at 33.)  In addition to a thorough review of the objective treatment evidence including the relevant examination findings, the ALJ explained that Brad D. had reported in October 2018 that he was "very busy with active work over the weekend" and had "worked on his son's car and cut down a tree." *Id*. (citations omitted).  The ALJ also explained that in March 2020, Brad D. had reported to Dr. Gryspeerdt that his symptoms had "started a week earlier while doing yard[]work outside," but his pain had improved from an 8/10 the Friday before to only a 3-4/10 by the time of the treatment visit.  (Filing No. 10-2 at 34.)

During the hearing in September 2020, Brad D. testified, "I don't mow my yard.  My kids do my lawn, yard[]work."  (Filing No. 10-2 at 68.)  He further testified that he no longer mowed anymore, that "happened over the series of years," he had bought a larger riding mower "three or four years ago because it was really hurting [his] back a lot to mow grass," "and that helped for about a year or so . . . ."  (Filing No. 10-2 at 68-69.)  Brad D. explained:

> So I don't mow it no more, and I tried to use my weed eater 2017 I guess in the summer, and I actually lost my balance and fe[ll] down my pond at the end into the pond and dropped my weed eater in the water and everything, so I don't do that anymore.

(Filing No. 10-2 at 69.)  On October 29, 2018, Brad D. explained to his physical therapist that he "[d]id quite a bit of work over the weekend and still had pain," he had "worked on [his] son's car, [and] cut [a] tree down," and his pain progressed over the weekend.  (Filing No. 10-7 at 94.)  He also explained that his "symptoms [were] progressively worse with weaning back into heavier activities." (Filing No. 10-7 at 97.)  On November 4, 2019, Brad D. filled out a form for the SSA that reported that he did "no more yardwork," he always needed assistance, and he could not "do yardwork," because "any pulling – pushing – or jolt from riding mower cause[d] pain."  (Filing No. 10-6 at 28-29.)  On March 17, 2020, Brad D. reported to Dr. Gryspeerdt:

> Symptoms started a week ago.  Symptoms were preceded by overcompensating while doing yard[]work outside.  Symptoms are described as constant dull pain, with sharp pain if he does something too quickly.  Severity is mild.  Symptoms are constant.  Symptoms have improved.  Patient was seen on 3/13 by Dr. Glaser.  He was started on Flexeril 10mg TID and Meloxicam 15mg daily.  On Friday, it was an 8, couldn't [sic] hardly stand up.  Today, it is a 3 or 4.

(Filing No. 10-7 at 210.)  To a certain extent, the record shows that yardwork had a tendency to aggravate Brad D.'s symptoms.  But his statements to the SSA about when he stopped doing yardwork are inconsistent with the activities that he reported to his treating providers.  And the fact that Brad D. did not limit his activities as completely as he reported that they were limited suggests that he exaggerated his impairments.  Contrary to his contention on appeal, the Seventh Circuit has explained that "an ALJ has the burden of inquiry only when drawing inferences about the severity of a condition from the failure to seek or continue medical care, because lack of money or insurance might explain possible discrepancy." *McHenry v. Berryhill*, 911 F.3d 866, 873-74 (7th Cir. 2018) (citation omitted).  The ALJ does not have to probe into the extent of a discrepancy involving the claimant's testimony and his reported activities in the record; although, the claimant is free to develop the record about the extent of any possible discrepancy and the ALJ must

consider the full testimony.  *See id*.  The ALJ was entitled to rely on the record when discounting Brad D.'s credibility.

The ALJ also expressly considered that Brad D. "has an excellent work history."  (Filing No. 10-2 at 32.)  But as the ALJ explained, the criteria for Social Security disability is different than the criteria that Dr. Gryspeerdt assessed for purposes of determining Brad D.'s eligibility for an ironworker pension.[7]  (Filing No. 10-2 at 34-35.)  As explained above, the material question is whether Brad D. was limited to a range of light exertional work with jobs existing in significant numbers in the national economy or was he considered disabled because he was limited to no more than sedentary exertional work.  The ALJ also considered that Brad D. reported improvement with his pain with treatment (taking a prescribed muscle relaxer and nonsteroidal anti-inflammatory).  Brad D. has not demonstrated that the ALJ's subjective symptom evaluation was patently wrong, and the Court cannot reweigh the applicable factors that the ALJ properly evaluated.

**C.     Use of a Cane**

Brad D. asserts that he was prescribed a cane in January 2020.  (Filing No. 12 at 10.)  Brad D. contends that the ALJ erred by asking the VE about the effect of the use of a cane that is necessary for only ambulation.  *Id*.  Brad D. also asserts that he required the use of a cane while standing 20-30 hours during a workweek, he would need to hold the cane in one hand, and according to SSR 83-10 and SSR 83-12 most unskilled jobs require good use of both hands.  *Id*.  Brad D. contends that if the cane is prescribed, he cannot stand for 20-30 hours a week while being required to use two hands to perform the work that the ALJ relied on to support the step five denial.  (Filing No. 12 at 10-11.)

---

[7] In one opinion, Dr. Gryspeerdt explained he had "[c]arefully reviewed [the] ironwork[er] job description," and "Brad's lumbar spine condition . . . prevent[ed] safe work in his current state."  (Filing No. 10-7 at 141.)  The VE testified that Brad D. performed heavy exertional work as an ironworker.  (Filing No. 10-2 at 72.)

SSR 96-9p (S.S.A. July 2, 1996), 1996 WL 374185, at *7, explains that an "adjudicator must always consider the particular facts of a case" concerning the use of hand-held assistive devices.  The ruling explains:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

*Id*.  Depending on the circumstances, the SSA's guidance suggests that consultation with a vocational resource "may be especially useful" to consider the effect of the use of an assistive device on the occupational base.  *Id*.  And an agency description of how work is "ordinarily" performed at certain exertional levels does not refute expert testimony in response to a specific question.  *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000).  Furthermore, in *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012), the court also explained that even abundant evidence of the claimant's use of an assistive device—including his presentation with one during treatment visits— did not necessarily establish that an assistive device was medically required according to SSR 96-9p.  The court further explained that even a physician's letter that "asserted matter-of-factly" that the claimant "does need a crutch" lacked "the specificity necessary to determine whether this was the doctor's *medical* opinion or merely a restatement of what was told to him by [the claimant]." *Id*. (emphasis in original).  And while a prescription my assist the recipient getting the cost covered by insurance, an assistive device is not a controlled substance that requires a prescription.  *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (a cane does not require a prescription).

Here, the ALJ expressly considered Dr. Gryspeerdt's examination findings in March 2020, including that Brad D. had a normal gait that was assisted by a cane.  (Filing No. 10-2 at 34.)  Brad D. testified that he was "prescribed" a cane in "January" 2020.  (*See* Filing No. 10-2 at 62-63.)

18

Brad D. also previously reported to the SSA that he was prescribed a "walking cane" by Dr. Gryspeerdt on January 21, 2020, because of numbness in his left leg, multiple falls, and instability. (Filing No. 10-6 at 61.)  The record does contain any treatment visit from January 2020.  Brad D. was represented by counsel at the hearing, and a claimant represented by counsel is presumed to have made his best case to the ALJ.  *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007).  Dr. Gryspeerdt's March 2020 treatment note does reference a cane under "medications," but the only explanation is to "see instructions," and he notes Brad D.'s chronic back pain and degenerative disc disease.  The medical record does not detail the specific situations that it was necessary for Brad D. to use a cane.[8]  As discussed above, Dr. Gryspeerdt's June 2020 assessment—that was properly discounted by the ALJ in part because of Dr. Gryspeerdt's apparent reliance on Brad D.'s subjective complaints—included that he would need a cane.  But Dr. Gryspeerdt indicated "yes" by marking a checkbox when asked, "While engaging in occasional standing/walking, must your patient use a cane or other hand-held assistive device?"  (Filing No. 10-7 at 218.)  The result is ambiguous if the cane is needed for standing, walking, or both.  Dr. Gryspeerdt also checked boxes indicating that "imbalance," "pain," and "weakness" were the symptoms that supported the need for the cane. *Id*.  But there is little to no evidence that Brad D. had any objective weakness on examination, and he has not demonstrated that the ALJ's evaluation of his subjective symptoms was patently wrong.

The ALJ asked the VE about the effect of further limitations—in addition to all the limitations that would ultimately comprise the ALJ's RFC finding—for an individual reduced to standing and walking four hours per workday, who also needed "use of a hand-held assistive device for ambulation," but "the contra-lateral upper extremity could be used to lift and carry up to the exertional limits," *i.e.*, twenty pounds frequently and ten pounds occasionally.  (Filing No. 10-2 at

---

[8] Brad D. testified that anytime he left his porch, he had his cane, but inside the house, he could "hold onto a counter or anything . . . ."  (Filing No. 10-2 at 63.)

72-74.)  The VE testified that the additional limitations would not preclude performance of the representative light exertional occupations that were ultimately the basis of the step five denial, but the national numbers would be reduced to 75,000 cashier jobs, 25,000 packager jobs, and 50,000 routing clerk jobs.  (Filing No. 10-2 at 73-74.)  Brad D.'s counsel did not cross-examine the VE about the effect of a hypothetical individual's need to use a cane for standing, he only clarified, and the VE confirmed that the job numbers would not be reduced any further by the limitations specified by the ALJ concerning a hand-held assistive device.  (Filing No. 10-2 at 75.) In the decision, the ALJ explained that alternative RFC findings that added these additional limitations would result in a finding that Brad D. was not disabled because there were still a significant number of light exertional jobs that he could perform.  (Filing No. 10-2 at 37-38.)  Brad D. has not demonstrated that the record supported more restrictive relevant limitations than the ALJ's alternative findings, let alone has he demonstrated that those findings are necessarily material in his case.  And the ALJ was entitled to rely on Brad D.'s counsel to present his best case for benefits.  Accordingly, Brad D. has not shown error or that the ALJ's RFC finding was unsupported by substantial evidence concerning Brad D.'s use of a cane.

## V.   <u>CONCLUSION</u>

"The standard for disability claims under the Social Security Act is stringent."  *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010).  For the reasons stated above, the Court finds no legal basis to reverse the ALJ's decision.  The final decision of the Commissioner is **AFFIRMED**.  Brad D.'s appeal is **DISMISSED**.

**SO ORDERED.**

Date:  11/3/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

20

DISTRIBUTION:

James Roy Williams
YOUNG REVERMAN AND MAZZEI CO., LPA
jwilliams@yrmlaw.com

Catherine Seagle
SOCIAL SECURITY ADMINISTRATION
catherine.seagle@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov